**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 1, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

LEONARDO CARRILLO,

　　Defendant - Appellant.

No. 23-2105
(D.C. No. 2:19-CR-00201-MIS-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

Defendant Leonardo Carrillo challenges the substantive reasonableness of a twenty-four month revocation sentence that was imposed by the district court after Carrillo admitted to violating the terms of his supervised release by using controlled substances and absconding from a residential reentry center. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the judgment of the district court.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

In 2019, Carrillo pleaded guilty to one count of conspiracy to transport an illegal alien, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(i). Carrillo was sentenced to a term of imprisonment of twenty-four months, to be followed by a three-year term of supervised release. Carrillo completed his term of imprisonment and commenced his term of supervised release on May 5, 2022.

On June 14, 2022, Carrillo's probation officer filed a petition for revocation of Carrillo's supervised release. The petition noted that one of the conditions of Carrillo's supervised release was that he "must refrain from any unlawful use of a controlled substance." ROA, Vol. I at 17. The petition alleged, however, that on June 3 and 13, 2022, Carrillo submitted to random drug tests at a residential reentry center and, on both occasions, admitted to using various illegal substances. The petition further noted that Carrillo was required, as a term of his supervised release, to "reside in a residential reentry center for a term of (up to) six months" and "must follow the rules and regulations of the center." *Id*. According to the petition, however, on the evening of June 13, 2022, the staff at the residential reentry center "discovered [Carrillo] was not on the facility grounds" and "[f]urther investigation revealed [he] jumped over the fence and left the [center] without permission." *Id*.

On June 17, 2022, a separate federal criminal case, No. 22-CR-1960, was filed against Carrillo in the district court charging him with one count of escape from custody, in violation of 18 U.S.C. § 751(a). That charge related to Carrillo's escape from the residential reentry center on June 13, 2022.

2

On October 19, 2022, Carrillo's probation officer filed an amended petition for revocation of Carrillo's supervised release. The amended petition included the same information contained in the original petition but added the following additional information. To begin with, the amended petition noted that the terms of Carrillo's supervised released required him to refrain from "commit[ting] another federal, state, or local crime." *Id*. at 20. The amended petition in turn alleged that "[o]n June 13, 2022, a Criminal Complaint was filed" in federal district court "charging [Carrillo] with 18 U.S.C. § 751(a): Escape from Custody," and that the case "remain[ed] pending." *Id*. at 20. The amended petition also alleged that on October 8, 2022, Carrillo "was arrested by deputies with the Dona Ana County Sheriff's Office at his mother's residence," and that "[a] Criminal Complaint [was] filed in the Dona Ana County Magistrate Court charging [him] with Aggravated Assault of a Household Member with a Deadly Weapon, (a 4th degree felony punishable by 18 months custody), Battery Against a Household Member (misdemeanor), and Concealing Identity (misdemeanor)." *Id*.

On December 1, 2022, Carrillo pleaded guilty to the escape from custody charge in Case No. 22-CR-1960.

On May 31, 2023, Carrillo appeared before the district court and admitted to the violations alleged in the amended petition for revocation, with the exception of the allegation that Carrillo committed new criminal offenses for which he was

3

charged in federal and state court.[1]  In other words, Carrillo admitted that, shortly after beginning his term of supervised release, he violated the terms of his supervised release by using illegal substances and absconding from the residential reentry center.

On June 28, 2023, the district court held a joint sentencing hearing for Carrillo's escape from custody conviction and his supervised release violations.  The district court sentenced Carrillo to a term of imprisonment of thirty months for the escape from custody conviction, to be followed by a three-year term of supervised release.  As for the supervised release violations, the district court concluded that they were "Grade B violation[s]," and that Carrillo's criminal history category was V, resulting in a Guidelines sentencing range of "12 to 18 months" and a "maximum term [of] 24 months."  ROA, Vol. III at 37.  The district court announced that it intended "to vary" upward from the guideline range "to 24 months" due to "the nature and circumstances of the offense and the history and characteristics of the defendant."  *Id*. at 37–38.  The district court explained that, regarding the nature and circumstances of the offense, Carrillo "abscond[ed] very quickly after his placement at the halfway house."  *Id*. at 38.  As for Carrillo's criminal history, the district court cited: (a) Carrillo's "2001 theft conviction"; (b) his "2013 aggravated burglary conviction, where he broke into somebody's house," "beat the victim," who had been sleeping, "and demanded the victim's prescription medications"; (c) his "2015 battery against a household member conviction"; (d) his 2018 "transporting"

---

[1] The district court, acting pursuant to the government's motion, dismissed the allegation regarding Carrillo committing new criminal offenses.

conviction, which involved "a high-speed chase"; (e) his "numerous writeups" and special-unit housing "while he was in the Bureau of Prisons"; and (f) his "numerous other contacts with law enforcement, some resulting in charges that were dismissed and some not, . . . span[ning] from 2013 to 2022." *Id*. at 38–39. The district court concluded that "a Guideline sentence" would not "adequately deter" Carrillo, "given his criminal history and his behavior on supervised release where he absconded from the halfway house in about a month." *Id*. at 39. The district court further concluded that "an upward variance [wa]s needed to protect the public from the defendant." *Id*. The district court stated that the term of imprisonment imposed for the supervised release violations would "run consecutively to the sentence the Court just imposed in 22-CR-1960." *Id*. at 40. The district court also stated that no new term of supervised release would be imposed in connection with the sentence on the supervised release violations.

Final judgment was entered in the case on June 28, 2023. Carrillo filed a timely notice of appeal.

## II

On appeal, Carrillo argues that the revocation sentence imposed by the district court for the supervised release violations "is substantively unreasonable because it is not within the range of reasonable sentences when the relevant statutory factors are considered." Aplt. Br. at 11. Carrillo argues in support that his "violations of supervised release are the direct result of his substance abuse disorder and his mental health issues." *Id*. He in turn asserts that "[r]esolving [his] substance abuse problem

by getting him into effective substance abuse treatment is key to deterring any future criminal conduct from him" and "to the protection of the public." *Id*. Carrillo asserts that "the need to provide him with substance abuse and mental health treatment," as well as the "circumstances of [his] offense, his own characteristics and history, . . . and the need to deter criminal conduct and protect the public all suggest that his two-year prison sentence . . . is unwarrantedly harsh, especially for his first violation of supervised release." *Id*. Lastly, Carrillo asserts that "by imposing the maximum sentence of confinement allowed by law, the [district] court did not give [him] any credit for fully accepting responsibility and acknowledging his addiction and mental health issues." *Id*.

"Substantive reasonableness focuses on the length of the sentence and requires that sentences be neither too long nor too short." *United States v. Walker*, 844 F.3d 1253, 1255 (10th Cir. 2017). "When reviewing a sentence for substantive reasonableness, we focus on 'whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a).'" *United States v. Cookson*, 922 F.3d 1079, 1091 (10th Cir. 2019) (quoting *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009)). "A sentencing decision is substantively unreasonable if it 'exceed[s] the bounds of permissible choice, given the facts and the applicable law.'" *United States v. Chavez*, 723 F.3d 1226, 1233 (10th Cir. 2013) (quoting *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007)).

6

"We review substantive reasonableness for an abuse of discretion." *United States v. Williams*, 10 F.4th 965, 977 (10th Cir. 2021). "We do not reweigh the sentencing factors but instead ask whether the sentence fell within the range of 'rationally available choices that facts and the law at issue can fairly support.'" *United States v. Blair*, 933 F.3d 1271, 1274 (10th Cir. 2019) (quoting *United States v. Martinez*, 610 F.3d 1216, 1227 (10th Cir. 2010)). "[W]e will defer to the district court's judgment so long as it falls within the realm of ... rationally available choices." *United States v. Durham*, 902 F.3d 1180, 1236 (10th Cir. 2018) (quoting *McComb*, 519 F.3d at 1053).

Notably, the district court in this case addressed each of the § 3553(a) factors in explaining its decision to impose a twenty-four month sentence for the supervised release violations. The district court began by noting "the nature and circumstances of the offense," in particular Carrillo's "absconding very quickly after his placement at the halfway house." ROA, Vol. III at 38. The district court in turn emphasized Carrillo's extensive and sometimes violent criminal history, his "numerous writeups" while in the custody of the Bureau of Prisons, and his "numerous other contacts with law enforcement . . . span[ning] from 2013 to 2022." *Id*. at 38–39. The district court then "consider[ed] the need for the sentence imposed to afford adequate deterrence to criminal conduct" and concluded that "a Guideline sentence" would not "adequately deter . . . Carrillo, given his criminal history and his behavior on supervised release where he absconded from the halfway house in about a month." *Id*. at 39. The district court also "consider[ed] the need to protect the public from further crimes of

the defendant and f[ound] an upward variance [wa]s needed to protect the public from the defendant." *Id*. The district court "consider[ed] the need to provide" Carrillo "with treatment" and "recommend[ed] [a] 500 hours program" while Carrillo was incarcerated and also ordered "more treatment [during] his supervised release" from the escape from custody conviction. *Id*. The district court addressed "the kinds of sentences available in this case" and concluded that the presumption of reasonableness that is typically afforded to a Guideline range sentence was "overcome by the factors in this case," including Carrillo's "criminal history and behavior on supervised release, both in state court with his probation and here in federal court." *Id*. As for "the need to avoid unwarranted sentencing disparities among defendants with similar records," the district court noted that it was "not sure there [wa]s a sentencing disparity, given . . . Carrillo's lengthy and violent criminal history." *Id*. at 39–40. The district court further stated that "if there [wa]s a sentencing disparity," it was "warranted by the facts in this case, where he absconded so quickly after placement in the halfway house." *Id*. at 40. Lastly, the district court noted there was "no restitution in this case, so [it was] not considering any need for restitution." *Id*.

We conclude there was no abuse of discretion on the part of the district court in imposing the twenty-four month sentence in this case. As the Supreme Court has noted, "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case." *Gall v. United States*, 552 U.S. 38, 51 (2007). And that is precisely what occurred here: the district court, after

8

considering all of the relevant statutory factors, concluded that a twenty-four month sentence was necessary to comply with all of the purposes of sentencing.  Nothing in the record in this case persuades us that the district court exceeded the bounds of permissible choice in making its decision.

III

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge